**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

STEVEN J. WEEDON,

    Petitioner,

    v.

UNITED STATES,

    Respondent.

Criminal Action No. 00-134 (CKK)
Civil Action No. 04-403(CKK)

**MEMORANDUM OPINION**
(October 23, 2009)

Presently before the Court is Petitioner Steven J. Weedon's *pro se* [47] Motion to Vacate

Sentence Pursuant to 28 U.S.C. § 2255.[1] Petitioner's Motion raises two separate constitutional

claims: (1) that he received ineffective assistance of counsel at his initial sentencing hearing in

violation of the Sixth Amendment; and (2) that his sentence violated the Sixth Amendment

because the Court imposed enhancements based on facts found by the Court and not agreed to by

Petitioner.  *See* Mot. to Vacate Sentence ("Pet'r's Mot.") at 1, 3; Suppl. Submission to Pet'r's

Section 2255 Mot. ("Pet'r's Suppl.") at 1, 2.  For the reasons explained below, the Court shall

deny Petitioner's Motion.

**I. BACKGROUND**

On February 14, 2002, Petitioner was sentenced by this Court to 168 months

imprisonment, followed by four years of supervised release, after pleading guilty to one count of

---

[1] Subsequent to filing his initial Motion to Vacate, Petitioner filed a Supplemental
Submission adding an additional claim. *See* [51] Suppl. Submission to Pet'r's § 2255 Motion
(hereafter "Pet'r's Suppl.").  The Court shall treat Petitioner's Supplemental Submission as part
of his original Motion to Vacate.

unlawful possession of cocaine with intent to distribute and one count of unlawful possession of

cocaine base ("crack") with intent to distribute. *See* United States' Opp'n to Pet'r's Mot.

("Opp'n") at 2, 4.[2] On appeal, the D.C. Circuit affirmed Petitioner's conviction and sentence.

*See United States v. Weedon*, 71 Fed. Appx. 70 (D.C. Cir. 2003). Petitioner then filed his Motion

to Vacate Sentence Pursuant to 28 U.S.C. § 2255, which was subsequently amended. *See* Pet'r's

Mot.; Pet'r's Suppl.[3] The Government filed an opposition, and Petitioner filed a Traverse. *See*

Opp'n; Pet'r's Traverse. As amended, Petitioner's Motion asserts two claims: (1) that Petitioner

was denied effective assistance of counsel at his sentencing hearing because his counsel (a)

mishandled argument about a sentencing enhancement for possessing a weapon during a drug

trafficking offense and (b) failed to pursue a downward departure based on cooperation with the

government; and (2) that Petitioner's sentence is unconstitutional under *Blakely v. Washington*,

542 U.S. 296 (2004), because the factual basis for the sentence enhancements imposed by the

Court was not charged in the indictment or agreed to by Petitioner.[4] Pet'r's Mot. at 1, 3; Pet'r's

---

[2] On August 2, 2008, this Court partially granted Weedon's motion to reduce his sentence in accordance with a retroactive change in the applicable Sentencing Guidelines. *See* [64] Order (Aug. 4, 2008). Accordingly, Weedon's sentence was reduced from 168 months to 135 months. *Id.* However, the resentencing does not affect the merits of Weedon's § 2255 Motion.

[3] Petitioner also filed another "Supplement to 2255 Motion" in which he restated several of the arguments in his initial motion and sought to add an "another" claim for ineffective assistance of counsel. *See* Pet'r's Suppl. to 2255 Mot. & Claim of Entitlement As Per Cunningham v. California ("Pet'r's 2d Suppl."). Because Petitioner's "additional" claim is integrally related to his other ineffective assistance claims, the Court shall consider them as part of Petitioner's Motion.

[4] Petitioner's Motion and all other pleadings submitted by the parties were submitted prior to the Supreme Court's decision in *Booker v. United States*, 543 U.S.220 (2005), which explicitly applied the *Blakely* rule to the U.S. Sentencing Guidelines. Because *Booker* is now the proper rule to apply to this case, Petitioner's and the Government's *Blakely* arguments will be analyzed through the lens of *Booker* and its subsequent treatment by the D.C. Circuit. *See In Re*

Suppl. at 1, 2.  Petitioner thus asks the Court to vacate his sentence and convene a new sentencing hearing.  Pet'r's Mot. at 4.

**A.    Petitioner's Arrest and Conviction**

Petitioner was charged in a two-count indictment with possession with intent to distribute 500 grams or more of cocaine ("Count I") and possession with intent to distribute five grams or more of crack ("Count II").  Opp'n at 2.[5]  The charges arose from an investigation made by the D.C. Metropolitan Police Department (MPD) on March 16, 2000, in response to a complaint made by Petitioner's girlfriend that Petitioner had threatened her with a gun in her home.  Opp'n, Ex. 1 (Proffer in Supp. of Guilty Plea ("Proffer")) at 1; Opp'n at 2.  Upon arriving at the address specified by Petitioner's girlfriend, MPD arrested Petitioner after he answered the door and identified himself as Steven Weedon.  Proffer at 1.  After obtaining permission from the girlfriend, who was the owner of the home, 9/7/2000 Hearing Transcript ("Tr.") at 18, officers then saw in plain view "three large white chunks of a powder-like substance" in the kitchen.  *Id.* This substance was later analyzed by a Drug Enforcement Agency (DEA) chemist, and found to be 952.6 grams of cocaine and 31 grams of crack.  *Id.*  Officers also found a loaded .380 caliber Davis pistol with an obliterated serial number in a bedroom dresser.  *Id.*

On September 7, 2000, Petitioner signed a plea agreement in which he pled guilty to both charges in the indictment.  Opp'n, Ex. 2 ("Plea Agreement") ¶ 1.  In the Plea Agreement, Petitioner admitted that "his .380 caliber handgun was found" in the dresser.  *Id.* ¶ 3.  Petitioner

---

*Zambrano*, 433 F.3d 886, 887-88 (D.C. Cir. 2006).

[5] Petitioner has not provided the Court with any factual statements.  All facts are therefore drawn from the Government's Opposition and the Court's record from the underlying criminal case.

also agreed to cooperate with the Government and understood that whether he was determined to

have provided "substantial assistance," and any subsequent motion for downward departure, was

at the discretion of the United States Attorney's Office. *Id.* ¶¶ 6, 7, 18. The Plea Agreement

also stated that Petitioner would be eligible for a decrease in his base offense level of 2 points for

acceptance of responsibility "provided [Petitioner] . . . does not attempt to obstruct justice." *Id.*

¶ 21.

**B.     Petitioner's Post-Plea Activity and Sentencing**

After pleading guilty on September 11, 2000, Petitioner was released in order to assist the

Government with drug investigations. Opp'n at 3; Pre-Sentence Investigation Report ("PSR")

¶ 5. Petitioner made one "controlled buy" in an attempt to assist in other ongoing investigations,

but the address of the buy could not be verified by investigators; therefore, no fruitful assistance

was yielded. Opp'n at 3. Thereafter, Petitioner failed to respond to attempted contact by the

Government; it was ultimately determined that Petitioner had left the District of Columbia and

fled to Jamaica. *Id.*; Gov't Opp'n, Ex. 3 ("Gov't Sentencing Mem.") at 2. Petitioner failed to

appear at a court date on December 7, 2000, and a bench warrant was issued. Opp'n at 3; *see*

*also* 9/7/00 Tr. at 56-57 (setting a control date for the PSR for December 7, 2000, at 4:30 p.m. at

which the Court required the Petitioner's presence). In November 2001, Petitioner was

apprehended in Jamaica and returned to the United States and held without bond. PSR ¶ 5.

At Petitioner's February 14, 2001 sentencing hearing, Petitioner's counsel made two

objections to the PSR. The first objection was to the PSR's recommendation that Petitioner

receive a two point enhancement "because a dangerous weapon was possessed or present in

relation to the offense conduct." PSR ¶ 15, PSR Addendum 15; United States Sentencing

Guidelines ("U.S.S.G.") § 2D1.1(b)(1). In order to overcome the presumption that the gun was possessed in the manner contemplated by the Guidelines, it had to be "clearly improbable that the gun was connected to the offense." U.S.S.G. § 2D1.1 cmt. n.3. Petitioner's counsel argued that because the gun was located upstairs in a dresser and away from the drugs in the kitchen, there was no evidence indicating that Petitioner was using the gun in the course of any drug offense; therefore, "it's improbable that [the gun] was being used along those lines," and that Petitioner should not be subject to a two-point increase in his base offense level. 2/14/02 Tr. at 4. The Court rejected this argument, finding "there is no explanation that makes it clearly improbable that this gun was there for some other purpose" other than in connection with the drug offenses, and imposed the two-point enhancement. *Id.* at 8.

Counsel's second objection was to the PSR's recommendation that Petitioner not receive a two-point decrease in his base offense level for acceptance of responsibility. PSR ¶ 20; PSR at 16 (Addendum); U.S.S.G. § 3E1.1(a). The Court noted that when there is an enhancement suggested for obstruction of justice, as in this case due to Petitioner's flight to Jamaica, there must be extraordinary circumstances in order for the acceptance of responsibility deduction to apply in conjunction with the U.S.S.G. § 3C1.1 obstruction of justice enhancement. 2/14/02 Tr. at 9; U.S.S.G. § 3E1.1 cmt. n.4. Counsel stated that Petitioner's flight was the result of extenuating circumstances arising from Petitioner's cooperation with the Government. 2/14/02 Tr. at 9-10. However, counsel never expounded on what those "extenuating circumstances" were. *Id.* at 9–10. Counsel also argued that Petitioner "should be entitled to some consideration" for the cooperation he gave to the Government before his flight. *Id.* at 14. The Court stated that Petitioner's flight is what resulted in the two-point suggested enhancement for obstruction of

justice, and that the enhancement had nothing to do with Petitioner's cooperation. *Id.* at 16. Furthermore, Petitioner not only fled the country, he also failed to return voluntarily, lived in Jamaica under an alias, missed a court date, and failed to contact anybody prior to his flight to address whatever concerns he might have had. *Id.* The Court therefore found that there were no extraordinary circumstances that would permit the Court to apply a two-point deduction for acceptance of responsibility. *Id.* at 17, 18. Petitioner was sentenced to 168 months in prison for each count, to be served concurrently.[6] *Id.* at 27. Petitioner was also sentenced to four years of supervised release for each count, also to be served concurrently. *Id.* at 27–28.

On August 15, 2003, the D.C. Circuit Court of Appeals affirmed Petitioner's conviction, rejecting his claims of ineffective assistance of counsel, improper denial of his motion to suppress the gun found in the home, and error on the part of this Court for "not departing downward from the United States Sentencing Guidelines . . . based on his assistance to the government" and for applying the dangerous weapons enhancement. *United States v. Weedon*, 71 Fed. Appx. 70, 70 (D.C. Cir. 2003). Petitioner did not seek a petition for writ of certiorari, and on November 14, 2003, 90 days after the Court of Appeals affirmed Petitioner's conviction and sentence, Petitioner's conviction became final. Opp'n at 4; 28 U.S.C. § 2101(c) (providing 90 days from the date of the entry of judgment or decree for a party to file a petition for writ of certiorari); Sup. Ct. R. 13 (giving parties 90 days in which to petition for writ of certiorari); *Clay v. United States*, 537 U.S. 522, 527 (2003) (defining the moment at which finality attaches as "when the time for filing a certiorari petition expires").

---

[6] This sentence was based on an offense level of 34 (thirty points for the drugs, plus two points each for the dangerous weapons enhancement and obstruction of justice) and a category II criminal history. *Id.* at 19.

## II. LEGAL STANDARDS

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may

move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that

his sentence was imposed "in violation of the Constitution or laws of the United States . . . or that

the sentence was in excess of the maximum authorized by law . . . ." 28 U.S.C. § 2255. The

circumstances under which such a motion will be granted, however, are limited in light of the

premium placed on the finality of judgments and the opportunities prisoners have to raise most of

their objections during trial or on direct appeal. *See United States v. Frady*, 456 U.S. 152, 164

(1982) ("Once the defendant's chance to appeal has been waived or exhausted, . . . we are

entitled to presume he stands fairly and finally convicted, especially when . . . he already has had

a fair opportunity to present his federal claims to a federal forum."). Two such limitations are

particularly relevant to the present motion.

First, a prisoner cannot raise a claim on collateral appeal that was raised and adjudicated

on direct appeal, unless there has been an intervening change in law. *United States v. Greene*,

834 F.2d 1067, 1070 (D.C. Cir. 1987). *Id.* (citing *Garris v. Lindsay*, 794 F.2d 722, 726-27 (D.C.

Cir. 1986)). Second, a prisoner may not raise a claim on collateral appeal that he *could* have

contested on direct appeal unless he can first demonstrate either: (1) "cause" for his failure to do

so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of

which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622 (1998). However,

"[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he

need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these

claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130

7

F. Supp. 2d 43, 45 (D.D.C. 2000) (citing *United States v. Johnson*, 1999 WL 414237 at 1 (D.C. Cir., May 28 1999)), *aff'd*, 22 Fed. Appx. 3 (D.C. Cir. 2001).

"[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166. Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. However, a district court need not conduct an evidentiary hearing before denying a § 2255 motion when "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.*; *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996). "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal . . . ." Rules Governing § 2255 Proceedings, Rule 4(b). "[A] district judge's decision not to hold an evidentiary hearing before denying a § 2255 motion is generally respected as a sound exercise of discretion when the judge denying the § 2255 motion also presided over the trial in which the petitioner claims to have been prejudiced." *Morrison*, 98 F.3d at 625.

### III. DISCUSSION

Petitioner's Motion raises both ineffective assistance of counsel claims and a claim that his sentence violates the rule set forth in *Blakely v. Washington*, 542 U.S. 296 (2004), and clarified by *United States v. Booker*, 543 U.S. 220 (2005).[7] The Government opposes

---

[7] As explained above, the Court shall analyze the parties' *Blakely* arguments through the lens of *Booker* and treat their arguments as incorporating the *Booker* decision.

Petitioner's Motion, claiming that his ineffective assistance of counsel claims lack merit and that *Blakely* and *Booker* are inapplicable because they do not apply retroactively to cases on collateral review, but that even if they did, Petitioner's claim is procedurally defaulted. Opp'n at 1-2. The Court shall analyze each of Petitioner's arguments in turn.

**A.   Ineffective Assistance of Counsel Claims**

Petitioner claims that his sentence should be vacated because he was not furnished with effective assistance of counsel at his sentencing. Pet'r's Mot. at 2-4. Specifically, Petitioner claims his counsel was defective for: (1) failing to call Petitioner's live-in girlfriend to testify at sentencing that Petitioner had no knowledge of the existence of the gun in order to bolster the argument that it was "clearly improbable" that the gun was connected to the underlying offense;[8] and (2) failing to direct this Court to address the level of cooperation Petitioner provided to the Government to determine whether Petitioner was entitled to a downward departure. *Id.* at 2-3.

Under the test for ineffective assistance of counsel established in *Strickland v. Washington*, 466 U.S. 668 (1984), a successful claim must meet two requirements. First, a party must show that his attorney's deficient performance was "so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." 466 U.S. at 687. A court conducting an inquiry should measure attorney performance under "prevailing professional norms," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 688-89. In short, a petitioner must overcome a strong presumption that counsel rendered

---

[8] Petitioner also claims that his counsel was ineffective for failing to reference statements made by Petitioner's girlfriend in the Pre-Sentence Investigation Report indicating that the gun did not belong to him and that she had previously lied about the gun's ownership. *See* Pet'r's 2d Suppl. at 2-3.

adequate and effective assistance. *See id.* at 690 ("[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."); *see also United States v. Askew*, 88 F.3d 1065, 1070-71 (D.C. Cir. 1996) (explaining *Strickland* standard for deficient performance); *United States v. Mitchell*, 216 F.3d 1126, 1130-31 (D.C. Cir. 2000) (same).

Second, it is not enough to show that counsel's performance was professionally deficient; there must also be prejudice sufficient to create a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. That some effect on the outcome of trial is conceivable does not meet the level of prejudice contemplated in *Strickland. Id.* at 693. Finally, a court deciding an ineffective assistance of counsel claim does not need to address both the deficient performance and prejudice components of the inquiry if there has been an insufficient showing on one prong. *Id.* at 687 (holding that unless a defendant shows both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable."). Accordingly, Petitioner must show that his trial counsel made professional errors that "were so serious as to deprive the defendant of a fair trial . . . whose result is reliable." *Id.*

### 1.    Failure to Call Petitioner's Girlfriend to Testify at Sentencing

Petitioner's first ineffective assistance of counsel claim rests on two grounds. First, Petitioner contends that failure to call a witness who is helpful to the defendant constitutes ineffective assistance of counsel. Traverse at 4. Second, Petitioner argues that he in fact never admitted to owning the gun. *Id.* Each of these arguments will be addressed in turn.

First, Petitioner contends that his trial counsel should have called Petitioner's live-in

10

girlfriend to testify that (1) Petitioner had no knowledge of the existence of the gun found in the dresser drawer in the bedroom; (2) the gun belonged to another friend of hers, not Petitioner; and (3) she erroneously told police that Petitioner threatened her with the gun out of retaliation. Pet'r's Mot. at 1.[9] Petitioner claims that instead of arguing that Petitioner had no knowledge of the gun, counsel made a "'use and carry' of a firearm" argument under 18 U.S.C. § 924(c) "which he knew was not applicable," and that his failure to call Petitioner's girlfriend to testify to these facts at the sentencing constitutes ineffective assistance of counsel. *Id.* at 2.

   In order to prevail, Petitioner must show that counsel's action was not within the range of "reasonably effective assistance." *Strickland*, 466 U.S. at 687. Counsel's primary argument at sentencing against the imposition of the dangerous weapons enhancement under U.S.S.G. § 2D1.1 was that the gun was located upstairs in the bedroom, away from where the drugs were located, such that the connection between the gun and drugs was improbable. 2/14/02 Tr. at 4. Counsel further argued that in the absence of any evidence showing that Petitioner was armed during the course of any drug transaction, it was improbable that the gun found was being used in the drug trade. *Id.* Given that the notes following U.S.S.G. § 2D1.1 state that when a dangerous weapon, such as a gun, is possessed by drug traffickers, there is a presumption that the gun is connected to the drugs, unless it is "clearly improbable," U.S.S.G. § 2D1.1 cmt. n.3, it was not outside the bounds of "reasonably effective assistance" to argue that the distance between the gun and the drugs, and the dearth of any evidence connecting the gun to the drugs, made the connection of the two improbable. 2/14/02 Tr. at 4; Opp'n at 22.

---

   [9] Alternatively, Petitioner contends it was constitutional error for his counsel not to at least reference statements made his girlfriend in the Pre-Sentence Investigation Report attesting to these facts. *See* Pet'r's 2d Suppl. at 2-3.

The gun found in the bedroom was a loaded pistol with an obliterated serial number, which led the Court to infer that "this is a gun that was there in all likelihood . . . for the use connected to the drug trade," and not a gun that had a non-drug trafficking related function, such as an "unloaded hunting rifle in the closet." 2/14/02 Tr. at 8; U.S.S.G. § 2D1.1 cmt. n.3.  Even if Petitioner's girlfriend had offered the testimony at the sentencing hearing that Petitioner claims she would have testified to had she been called as a witness, Pet'r's Mot. at 1, that testimony would have been insufficient to establish that it was "clearly improbable" that the gun had been used in connection with the drugs, U.S.S.G. § 2D1.1 cmt. 3, particularly in light of the fact that—as discussed below—Petitioner had already averred that the gun was his.  Testimony regarding whether or not Petitioner actually threatened his girlfriend with the gun is similarly unhelpful.  Even if the gun was not used by Petitioner to threaten her, this would not support a conclusion that it was "clearly improbable" that the gun was used in connection with drug trafficking.[10]

Second, Petitioner argues that he never admitted that the gun was his. Traverse at 4.  As stated above, Petitioner contends that his girlfriend would have testified that the gun did not

_____

[10] Petitioner relies on *United States v. Gray*, 878 F.2d 702 (3d Cir. 1989), to support this ineffective assistance of counsel argument. *See* Traverse at 4. However, *Gray* is inapposite here. In *Gray*, the petitioner filed an ineffective assistance of counsel claim alleging that his attorney had failed to do any pre-trial investigation. 878 F.2d at 703. The attorney in *Gray* admitted that he did not visit the scene of the crime; that he did not attempt to hire an investigator; and that he failed to make any discovery requests. *Id.* at 709. The Third Circuit found that the "complete abdication of the 'duty to investigate' recognized in *Strickland* . . . caused [the attorney's] performance to fall below the minimum standard of reasonable professional representation." *Id.* at 712. Therefore, while it is true that counsel's failure to investigate resulted in helpful defense witnesses not being called in *Gray*, the court found ineffective assistance of counsel based on abdication of the duty to investigate, rather than based on failure to call helpful witnesses. *Id.* Since Petitioner does not claim that a breach of counsel's duty to investigate was the cause of counsel's failure to call his girlfriend, *Gray* is not persuasive.

12

belong to him and that he in fact had no knowledge the gun was in her house. Pet'r's Mot. at 1.
Petitioner further contends that the admissions he made were merely an acknowledgment that he
understood what he was being charged with, and that he understood that he was not going to
argue against the charge. Traverse at 4. However, Petitioner's and counsel's own statements at
the Plea Hearing and at the Sentencing Hearing belie this argument, as does the Plea Agreement
Petitioner signed in connection with the Plea Hearing.

Paragraph 3 of the Plea Agreement, which was signed by Petitioner, states "Your client
agrees that, at the time of the incident, *his* .380 caliber handgun was found in the top drawer of
the bedroom" dresser. Plea Agreement ¶ 3 (emphasis added). Paragraph 3 goes on to state that
while the Government would be arguing for an enhancement based on the possession of a
dangerous weapon, Petitioner would be free to argue at sentencing "that he did not possess the
dangerous weapon *in a manner contemplated by the guidelines.*" *Id.* (emphasis added).
Therefore, by the terms of the Agreement, Petitioner did admit to owning the gun. In addition,
the only contention related to the gun that Petitioner raised was in relation to the statements made
by his girlfriend to the police that Petitioner threatened her with a gun. In so raising this
contention with the Court at the Plea Hearing, counsel and the Petitioner agreed that despite the
dispute with what his girlfriend said, the gun mentioned in the Proffer was Petitioner's gun:

[DEFENDANT'S COUNSEL]: We agree that the complainant said that Mr. Weedon
threatened her with the pistol. I think the court heard that testimony at the time of the
motions hearing. Now, he has always maintained he did not, but we do not dispute the
complaint from the complainant that she said that he threatened her with the pistol.

THE COURT: So, if I understand it, then, that the defendant is agreeing that that's what she
said, but he's not agreeing that that's what he did?

[COUNSEL]: Correct.

THE COURT: I take it that *in the proffer, that he's agreeing that that was his pistol*. I'm not sure how —

[COUNSEL]: And that the pistol was in, I believe the location, in the top drawer upstairs, *yes*.

9/7/00 Tr. at 19 (emphasis added).  The Petitioner himself later admitted to owning the gun at the

Plea Hearing:

[THE COURT]: So let me get back to the [Plea Agreement] for a second.  Now, *you're agreeing* in paragraph 3 that at the time of the incident that *your* handgun was found in the top drawer of the bedroom.  And you understand that the government's position at sentencing will be that your base offense level—remember, I talked about the offense level and how we added points—should be increased by two levels, two additional points, based on your possession of what they are claiming is a dangerous weapon.  Now, you're free to argue that you didn't possess the dangerous weapon as set out in the guideline, and it will be up to the court to make this decision as to whether you should get those extra two points or not, but you're agreeing to enter the plea without knowing how I'm going to rule on it.  Do you understand?

[PETITIONER]: Yes, ma'am.

9/7/00 Tr. at 28-29 (emphasis added).  Petitioner therefore agreed on at least two instances at the

Plea Hearing that he owned the gun, in addition to his admission in the Plea Agreement itself.

He certainly did not assert at the Plea Hearing that he never owned the gun.  He acknowledged

that he had the freedom to argue that he did not possess the gun in a manner contemplated by the

guidelines—possession not connected with drug trafficking activity—not that he did not possess

the gun at all.  After explicitly agreeing three times to ownership of the gun, had counsel called

Petitioner's girlfriend to testify at sentencing that in fact the gun was not Petitioner's, it would

have called into question the credibility of the entire plea process.  Further, any testimony by

Petitioner's girlfriend would have gone only to the ownership of the gun, not the possession of

the gun as contemplated by the guidelines, which is all that Petitioner reserved for argument at

14

sentencing.  Plea Agreement ¶ 3; 9/7/00 Tr. at 28-29.

Consequently, since Petitioner cannot even establish that the proposed testimony by his girlfriend would have assisted his case, counsel clearly acted within the bound of reasonableness in making the tactical decision not to call her at the sentencing.  Petitioner has not proven that "there is a reasonable probability that . . . the result of the proceeding would have been different," *Strickland*, 466 U.S. at 694.  Petitioner's ineffective assistance of counsel claim for failure to call Ms. Offutt to testify at Petitioner's Sentencing Hearing is therefore denied.

### 2.    Failure to Fully Argue Cooperation

Petitioner's second ineffective assistance claim is that his counsel failed to ensure that the Court fully addressed the issue of whether Petitioner was entitled to a downward departure based on cooperation with the Government.  Pet'r's Mot. at 3.  Petitioner contends that the Court failed to rule on the cooperation issue and instead focused primarily on whether Petitioner should be given a downward departure for acceptance of responsibility.  *Id.* at 3.

Petitioner's counsel raised the issue of Petitioner's cooperation, however, in the context of objecting to the recommendation in the PSR that Petitioner not be granted a two-point decrease in his base offense level for acceptance of responsibility because of his flight to Jamaica.  *See* PSR ¶ 20; PSR at 16 (Addendum).  Before counsel began his argument, the Court noted that where "there is enhancement for obstruction of justice[,] . . . the defendant is generally not entitled to the deduction for acceptance of responsibility even though he may have accepted responsibility for the specific crime, unless extraordinary circumstances exist." 2/14/02 Tr. 9; U.S.S.G. § 3E1.1 cmt. n.4.  Counsel argued that Petitioner's cooperation with the Government before he fled—including extenuating circumstances arising out of that cooperation alluded to

but never enumerated by counsel—constituted such "extraordinary circumstances." *Id.* at 9-10.

Therefore, counsel raised the issue of cooperation in conjunction with the issue of a downward

departure for acceptance of responsibility, but not in the context of the Government's refusal to

move for a downward departure based on substantial assistance to authorities under U.S.S.G.

§ 5K1.1.[11]   Whether or not Petitioner is correct in asserting that counsel should have more plainly

directed the Court's attention to the issue of Petitioner's cooperation during his sentencing

hearing, Pet'r's Mot. at 3-4, there is no indication that there is a "reasonable probability that . . .

the result of the proceeding would have been different" had counsel done so. *Strickland*, 466

U.S. at 694.

First, the Petitioner's Plea Agreement stipulates that the Government has sole discretion

regarding whether to move for a downward departure based on any substantial assistance,

irrespective of whatever assistance the Petitioner may provide. Plea Agreement ¶ 7. At his plea

hearing, Petitioner confirmed his understanding in a lengthy colloquy that the government had

discretion to seek a downward departure in exchange for substantial assistance; this Court

emphasized the fact that "the court can't do anything about it" if the Government does not seek

downward departure. 9/7/00 Tr. at 28-29. Second, as Petitioner himself seems to concede,

Pet'r's Mot. at 3, his cooperation cannot fairly be described as substantial. Whatever the context,

Petitioner's cooperation was discussed at length at his sentencing hearing, and the Government

_____

[11] During the sentencing hearing, towards the close of the discussion regarding acceptance of responsibility, Petitioner's counsel appears to have tried to raise the issue of cooperation separately. Specifically, counsel asked that: "If, however, the court . . . rules against me in terms of . . . this argument, I'd simply ask that the court, in terms of the guideline range, take into account that at least there was some initial cooperation or effort at cooperation." 2/14/02 Tr. at 11.

was of the belief that Petitioner may have never intended in good faith to provide cooperation, but was rather planning on "faking his cooperation" and fleeing the area, which he ultimately did. 2/14/02 Tr. at 11-12. There is no reasonable probability that this Court would grant Petitioner a downward departure on the basis of admittedly insignificant cooperation, particularly in light of the fact that the Government chose not to move for a downward departure and in fact suspected that the Petitioner had no intention of good faith cooperation. *Id.*

As above, since Petitioner failed to make a showing of prejudice, an analysis of whether Petitioner actually received reasonably effective assistance allegedly ineffective assistance is not required. *Strickland*, 466 U.S. at 697. However, it is worth noting that when Petitioner's counsel directed the Court's attention to "some initial cooperation or effort at cooperation" only in the context of asserting a showing of acceptance of responsibility despite Petitioner's fleeing to Jamaica, 2/14/02 Tr. at 11, he likely did so with the knowledge that petitioning this Court for a downward departure on the basis of this cooperation alone would be futile. Petitioner's ineffective assistance of counsel claim for failure to direct this Court to address Petitioner's cooperation is therefore denied.

**B.      Illegally Imposed Sentence**

Petitioner's contends that the two enhancements Petitioner received—one for possessing a gun in connection with a drug crime, U.S.S.G. § 2D1.1, and one for obstruction of justice, U.S.S.G. § 3C1.1—resulted in a sentence that was in excess of the sentence supported by the facts admitted by the Petitioner, in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), Pet'r's Suppl. at 1-2. However, this argument must fail in light of the D.C. Circuit's holdings that the rule in *Blakely* and *Booker* do not apply retroactively to cases on collateral review. *See*

17

*In re Fashina*, 486 F.3d 1300 (D.C. Cir. 2007); *In Re Zambrano*, 433 F.3d 886, 888 (D.C. Cir. 2006).

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court set forth the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty of a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Four years later, in *Blakely*, the Supreme Court clarified the term "statutory maximum" to mean "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303. In both *Apprendi* and *Blakely*, the Supreme Court was interpreting the Sixth Amendment in light of state sentencing procedures. In *Booker v. United States*, 543 U.S. 220 (2005), the Supreme Court applied *Blakely* to the Federal Sentencing Guidelines and held that they violated defendants' Sixth Amendment rights in that they required judges to make factual determinations resulting in enhancements that extend defendants' sentences beyond the maximum supported by the facts admitted by the defendant or found by a jury beyond a reasonable doubt. *Id.* at 232-33, 245.[12] The Court remedied this violation by effectively making the Guidelines advisory rather than mandatory, resolving the Guidelines' Sixth Amendment infirmities. *See Booker*, 542 U.S. at 245-46, 249.

Petitioner argues that, according to the Supreme Court's decision in *Blakely*, his Sixth

---

[12] The Court notes that the parties briefed this issue after the Supreme Court's decision in *Blakely* but before its decision in *Booker*. *See Blakely*, 542 U.S. 296 (decided on June 24, 2004); *Booker*, 543 U.S. 220 (decided on Jan. 12, 2005); Pet'r's Suppl. at 1 (filed on July 21, 2004); Gov't Opp'n at 1 (filed on Sept. 15, 2004). Because *Booker* is now the binding law with regard to the Federal Sentencing Guidelines, this Court must decide the sentencing issue in light of *Booker*, notwithstanding the parties' lack of briefing on that case's application.

Amendment right to trial by jury was violated by the Court's imposition of a two-point enhancement for Petitioner's alleged possession of a firearm and a two-point enhancement for his alleged obstruction of justice. *See* Pet'r's Suppl. at 2; *see also Blakely*, 542 U.S. at 303-04; *Booker*, 543 U.S. at 244. The Government contends first that the rule set forth in *Blakely* and *Booker* does not apply retroactively on collateral review, and second that this argument should be summarily denied because Petitioner failed to raise it either at sentencing or on direct appeal, and yet has not shown "cause" or actual prejudice suffered for this procedural default. Opp'n at 5, 14, 16, 17. Assuming *arguendo* that Petitioner's claim is not procedurally barred, the D.C. Circuit has explicitly held that the new rule announced in *Blakely*—and superseded with regard to the federal Sentencing Guidelines by *Booker*—is not applicable retroactively to cases on collateral review. *See In re Fashina*, 486 F.3d 1300 (D.C. Cir. 2007); *In Re Zambrano*, 433 F.3d 886, 888 (2006). Therefore the sentencing enhancements contested by Petitioner were permissibly imposed.

> As the Supreme Court explained in *Teague v. Lane*, 489 U.S. 288 (1989):
>
> Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced. . . . The first exception . . . [is] that a new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authorities to proscribe." . . . The second exception . . . [is] that a new rule should be applied retroactively if it . . . "will properly alter our understanding of the *bedrock procedural elements* that must be found to vitiate the fairness of a particular conviction."

*Id*. at 310-11 (quoting *Mackey v. United States*, 401 U.S. 667, 692–94 (1971)). The rule announced in *Booker*—that the Setencing Guidelines are advisory because otherwise they would violate a defendant's Sixth Amendment right to have juries find facts relevant to sentencing—is

unquestionably a constitutional rule of criminal procedure. *See Schriro v. Summerlin*, 542 U.S.

348, 353 (2004) (holding that the rule announced in *Ring v. Arizona*, 536 U.S. 584, 609 (2002),

which "altered the range of permissible methods for determining [a defendant's punishment],"

"is properly classified as procedural."); Opp'n at 10 (quoting *Schriro*, 542 U.S. at 348).

Moreover, this rule is "new" in that, at the time Petitioner's conviction and sentence became final

on November 14, 2003,[13] the notion that federal judges are not bound to adhere to the Federal

Sentencing Guidelines was not "dictated by then-existing precedent." *See Beard v. Banks*, 542

U.S. 406, 504 (2004) (emphasis omitted); *see also United States v. Samuel*, 296 F.3d 1169, 1172

(D.C. Cir. 2002) (holding that the *Apprendi* rule did not dictate the result later reached in *Blakely*,

thereby confirming that the *Blakely* rule, and *a fortiori* the *Booker* rule, was not the prevailing

law on November 14, 2003).

   In *In Re Zambrano*, the D.C. Circuit explicitly held that the rule announced in *Booker*

rule does not apply retroactively. *See* 433 F.3d at 888. In so holding, the D.C. Circuit first

recognized that, in *Tyler v. Cain*, 533 U.S. 656 (2001), the Court stated that a new constitutional

rule is only retroactive when the Supreme Court expressly makes it so, or if a subsequent holding

necessitates retroactive application of an earlier decided Constitutional rule. *Id.* at 887-88. As a

preliminary matter, the D.C. Circuit noted that the Supreme Court did not hold in *Booker* itself,

or since, that the now advisory nature of the United States Sentencing Guidelines is to be applied

retroactively. *Id.* at 888. Moreover, the court observed that, in *Booker*, the Supreme Court was

merely applying the rules made by *Blakely* and *Apprendi*—rules that the Supreme Court has

---

   [13] As explained *supra*, Part I, Petitioner's conviction became final on November 14,
2003, the date on which the opportunity to file a petition for writ of certiorari expired. Sup. Ct.
R. 13; *Clay*, 537 U.S. at 527.

never held to apply retroactively. *See In re Hinton*, 125 Fed. Appx. 317 (D.C. Cir. 2005)

(holding that the rule announced in *Blakely* does not apply retroactively); *In re Smith*, 285 F.3d 6,

8 (D.C. Cir. 2002) (holding that the rule announced in *Apprendi* does not apply retroactively).

Therefore, the holding in *Booker* does not necessitate retroactive enforcement of *Blakely* or

*Apprendi*. *Id.*; *see also In re Fashina*, 486 F.3d 1300, 1306 ("*Booker* announced neither a

substantive rule nor a watershed rule of procedure and therefore is not retroactive.")  In

accordance with the Court's holding in *Tyler*, the new rule announced in *Booker* cannot be

applied retroactively because the Supreme Court did not: (1) expressly state that it must be, or (2)

necessitate retroactive application in a subsequent holding. *Id.* at 887-888. Therefore,

Petitioner's sentence cannot be vacated on the grounds that the enhancements imposed by this

Court violated his Sixth Amendment rights.

**C.    Evidentiary Hearing is Not Necessary**

Petitioner requests an evidentiary hearing on his Motion with respect to the testimony of

his girlfriend. Pet'r's Mot. at 3.  However, nothing in Petitioner's Motion necessitates the

consideration of any information not within the briefings and record before the Court.  The Court

finds that Petitioner's ineffective assistance of counsel claims do not require a hearing since

Petitioner did not demonstrate that counsel's actions (or inactions) were beyond the scope of

reasonably effective assistance or a cause of prejudice to Petitioner. *See Morrison*, 98 F.3d at

626 ("[A] summary denial of a § 2255 motion is appropriate when the ineffective assistance

claim is speculative."); *United States v. Sayan,* 968 F.2d 55, 66 (D.C. Cir. 1992) ("[W]hen a

section 2255 motion involves ineffective assistance of counsel claims, no hearing is necessary if

the alleged deficiencies of counsel did not prejudice the defendant."); *see also United States v.*

*Fennell*, 53 F.3d 1296, 1304 (D.C. Cir. 1995) ("With two exceptions, claims of ineffective assistance of counsel require a fact-finding hearing . . . . One exception occurs when the trial record alone conclusively shows that the [petitioner] is entitled to no relief.")

### IV. CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate his sentence is denied. An appropriate Order accompanies this Memorandum Opinion.

Date:   October 23, 2009

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

22